*D. Turpie* and *D. P. Baldwin,* for appellee.

————————————●————————————

PRATHER *v.* ZULAUF.

PROMISSORY NOTE.—*Delivery.*—The delivery of a promissory note is the final act of its execution, without which it has no binding force.

SAME.—*Alteration.*—Prior to the delivery of a promissory note, an alteration by the maker, authorized by the surety, does not invalidate it, as against either surety or maker.

SAME.—*United States Revenue Stamp.*—A promissory note is valid without any United States revenue stamp. Even were a stamp essential, if one should be affixed to a note, and the note subsequently, but before delivery, should be altered by the change of the date thereof, no second stamp would be necessary.

APPEAL from the Clark Circuit Court.

DOWNEY, J.—Zulauf sued Prather and Nixon on a promissory note, a copy of which was filed with the complaint. Nixon made default. Prather pleaded as follows : first, a general denial of each and every allegation in the complaint; second, that he never signed or executed the note sued on, nor did he authorize or direct the execution of the same; third, that no consideration whatever moved from the plaintiff to him for the execution of said note, and that he only signed the same as the surety of said Nixon, as the plaintiff knew; that the note was first dated November 1st, 1868; that it was, in fact, signed by him on the 31st day of October, 1868, and that afterward, and after the execution and delivery of said note, the plaintiff altered, or caused the same to be altered, from November 1st, 1868, to November 2d, 1868; that after said alteration was made, no new United States

revenue stamp was ever affixed to or cancelled upon said note, but the revenue stamp which now appears on the note is the same which was affixed to said note and had been cancelled before said alteration was made, and when said note was executed and delivered; wherefore, etc.; fourth, that the note sued on herein was signed by him, if at all, on the 31st day of October, 1868; that it was at first dated November 1st, 1868, and that afterward, and after the execution and delivery of said note, the date of the same was, without his knowledge or consent, altered to November 2d, 1868; wherefore, etc.

The second, third, and fourth paragraphs of the answer were verified by the oath of the defendant.

The plaintiff replied to the third and fourth paragraphs of the answer, that it was true that the note sued on was at first dated November 1st, 1868, but he avers that the first day of November, 1868, was the first day of the week, commonly called Sunday; that as it appeared to be dated on Sunday, he refused to receive it, or to loan or advance any money upon it; that thereupon, and before the said note was fully executed by the said defendants, or either of them, by the delivery thereof to the plaintiff, the payee of said note, and before the plaintiff had loaned or advanced any money upon the same, the date was altered to November 2d, 1868, as it now appears on the face of said note. And, also, he says that every affirmative averment in the said paragraphs of said answer, and each of them, not admitted herein to be true, he specifically denies, and particularly that he altered, or knowingly caused said date to be altered, as alleged in said paragraph.

There was then a trial of the cause as to Prather, and an assessment of the damages as to Nixon, by the court, resulting in a finding for the plaintiff for the amount due on the note.

Prather moved the court for a new trial, because the finding was not sustained by sufficient evidence, and was contrary to law. This motion was disallowed, and judgment

was rendered for the plaintiff. The defendant, Prather, excepted to the overruling of the motion for a new trial, and put the evidence in the record.

The only error assigned is the overruling of the motion for a new trial.

As the evidence is short, we will set it out, so far as it is material. Nixon, testifying for the plaintiff, said:

"That is my signature to the note, and that is the signature of the defendant Prather; this note, in its present condition, was delivered to Zulauf just as it is now." The witness, while testifying, held the note sued on in his hand.

The plaintiff then offered in evidence the note sued on, to the introduction of which defendant Prather objected, for the reason that its execution by him had not been proved, but the court overruled the objection and admitted the note in evidence, and Prather excepted. The note so introduced was read in evidence, and is as follows:

"$500.

"On or before the 1st day of January, 1870, for value received, we, or either of us, promise to pay to John Zulauf, or order, five hundred dollars ($500), with interest at the rate of ten per cent. per annum, and without any relief or benefit from the valuation or appraisement laws of Indiana.

"CYRUS T. NIXON,
"THOS. W. PRATHER.

"JEFFERSONVILLE, IND., November 2d, 1868."

On cross examination, Nixon testified: "This note is the same as it was originally, with one exception, the change of November 1st to November 2d. Zulauf refused to receive it, because it was dated on Sunday. This refusal was at his own house. It had not been delivered to him then. He saw it as soon as it was handed to him on Saturday, October 31st, 1868, and the note was delivered to Mr. Zulauf the same day. When offered to Zulauf it was signed by Prather, and was dated November 1st, 1868, though signed on Saturday. The cancellation on the stamp which is on the note is of the date of November 1st, 1868, and was made

by me, I think. I cannot say whether the stamp was there when Prather and I signed it, or when I delivered it to Zulauf. I think I cancelled the stamp as of November 1st, 1868. The stamp now on the note is the same stamp that was on it originally, before the alteration of date was made. I made the cancellation before delivering the note. Prather wasn't present then. It was made at Zulauf's house. The note was signed by Prather at Schuler's store in Jeffersonville. He (Prather) was surety on the note. The money realized from the note was for my benefit. He was my surety. The money was paid to me on October 31st, 1868. I had arranged with Zulauf to get five hundred dollars at fourteen months, on my note, with Prather as surety. He was to discount such a note, and I calculated from November 1st, 1868, fourteen months. The alteration was made at my own request. Prather was not there, but I was authorized to make the alteration. Prather had agreed to endorse my note at fourteen months for five hundred dollars, and he knew Zulauf was to discount it. I had, without thinking, dated it on Sunday, and when Zulauf objected, I was authorized to change it. Prather afterward knew I had made the change, and offered to give me the five hundred dollars for my influence in getting him the nomination to a certain office. I do not recollect that anything was said to Prather about it until afterward. I made the alteration in Zulauf's presence, Prather being absent. The money was not paid to me until the alteration was made and the note delivered. There was no arrangement for Prather to pay a part of the note. November 1st, 1868, was Sunday. I wrote the body of the note either here (Charlestown) or at Jeffersonville. Prather signed it at Schuler's store. He knew that I wanted five hundred dollars, and he knew that Zulauf was to discount the note, and he endorsed it for that purpose."

Zulauf, testifying for himself, said: "The note sued on is in the same condition now as when I received it. No alteration has been made in it since he delivered it to me.

Prather *v.* Zulauf.

I refused to take the note from Nixon at first, because dated on Sunday. I went home to dine, and Nixon came there with it, and said he could change it so as to make a 2 out of it, so that it would be all right. The same stamp is on it now as when it was first brought to me, when I got it."

On cross examination, he said: "I did not see Prather when the change was made. I did not want to see him. His name was just as good as gold. The note was altered in my house."

On re-examination, he said: "The next day after that, Monday, I told Prather that I had paid the money on it to Nixon, and asked him, was it right? I told him that an alteration in the note was necessary. I can't say exactly what he said. I think I told him that it was dated on Sunday. I did not show him the note at the time. I told him the date had been changed from November 1st to November 2d. He nodded his head, and said, 'All right.' He looked as a Methodist looks—holy and sanctified. Nixon is a heathen; he belongs to the big church."

This was all the evidence.

Two objections are urged against the judgment of the circuit court; first, that the note was not restamped; and second, that it was rendered invalid as against the appellant on account of an unauthorized alteration of it after its delivery.

We are of opinion that neither objection is well taken.

The want of a stamp on the note did not render it invalid, even although it had not been stamped at all. *Smith* v. *Hunter*, 33 Ind. 106; *Wallace* v. *Cravens*, 34 Ind. 534. But if a stamp had been essential, no second stamp is necessary when, as in this case, the alteration is made while the transaction is *in fieri*. *Webber* v. *Maddocks*, 3 Camp. 1; *Wright* v. *Inshaw*, 1 Dowl. P. C. (N. S.) 802.

Upon the question whether the note was rendered invalid on account of the alteration, we are of the opinion that the decision of the circuit court was correct. As the note was payable at a fixed date in the future, and not in a certain

time after its date, the change of its date would not affect, in any way, the time when it would mature. But as it was to bear interest from date, perhaps a change in its date, without the consent of the appellant, would, in this view, be a material alteration. The change which was made was, however, by shortening the time during which the note was to run, and thus make the amount of the interest less. But it would be a question whether even the unauthorized change in this would not discharge the party. He had a right to stand by the contract which he had made, and no other could be made for him, even although it might be supposed to be more favorable to him. But in this case, the delivery of the note to Zulauf before the change in the date is not shown. In fact, the contrary is shown. The delivery of a note is the final act of execution, and the note has no binding force until it has been delivered. *Ketcham* v. *New Albany, etc., Railroad Company*, 7 Ind. 391. But we think the circuit court might, under the circumstances, very well have concluded that Prather authorized the change which was made. Nixon says he had authority to make the change. Zulauf says Prather, when told of the alteration, said, "All right." Prather did not deny this.

The judgment is affirmed, with ten per cent. damages and costs.

*J. H. Stotsenburg*, *T. M. Brown*, *J. G. Howard*, and *J. F. Read*, for appellant.

*G. V. Howk* and *W. W. Tuley*, for appellee.